IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERIC FINKE,

      Plaintiff,

vs.                                                               Civ. No. 12-1065 KG/SMV

PHARMASAFE, LLC,
a New Mexico limited liability company,
PAT ADAMS, BILL BELL, and
DOES 1-50, inclusive,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon Defendants' Motion and Memorandum to Dismiss for Failure to State a Claim with Respect to Certain of Plaintiff's Claims (Motion to Dismiss), filed February 22, 2013.  (Doc. 15).  On March 8, 2013, Plaintiff filed his response, and on March 21, 2013, Defendants filed their reply.  (Docs. 17 and 19).  Having reviewed the Motion to Dismiss, the response, and the reply, the Court grants the Motion to Dismiss, in part, in that: (1) Plaintiff's request for judicial notice is granted; (2) all claims against Defendant Pat Adams are dismissed without prejudice for lack of personal jurisdiction; (3) Claims II and III of the Complaint (Doc. 1) are dismissed without prejudice; (4) Claim IV is dismissed with prejudice as to Defendant Pharmasafe, LLC, otherwise Claim IV is dismissed without prejudice; (5) Claim V is dismissed with prejudice; and (6) Defendants' request for an award of costs is denied at this time.

*A. Background*

    *1. Factual Allegations in the Complaint*

This lawsuit is based on a business dispute and is brought under federal diversity jurisdiction.  Plaintiff, a resident and citizen of California, is suing (1) Pat Adams, a resident and citizen of Hawaii; (2) Bill Bell, a resident and citizen of New Mexico; (3) Pharmasafe, LLC, a citizen of New Mexico with its principal place of business in Albuquerque, New Mexico; and (4) Doe Defendants 1-50, inclusive.

Plaintiff alleges that in April 2007 he approached Adams with an idea to sell a secured cabinet for the dispensation of drugs.  (Doc. 1) at ¶ 10.  According to Plaintiff, he and Adams agreed to be equal co-founders and owners in a new business, AkamaiRx, to produce the storage cabinets.  *Id*. at ¶¶ 10-11.  Plaintiff contends that a third co-founder was brought into the enterprise, Jacqueline Moore.  *Id.* at ¶ 11.  Plaintiff alleges that, at that time, he resided in Alaska and Adams resided in Hawaii.  *Id.*

Plaintiff maintains that he subsequently moved to California, leaving a lucrative contract in Alaska, to work on the new business.  *Id*. at ¶ 13.  Plaintiff further contends that he "made this decision in reliance on Adams's [sic] promises that [Plaintiff] would be an equal owner in AkamaiRx and its secured cabinet product, and that all co-founders would work together in good faith to promote the success of the company and their mutual success in the venture."  *Id*.  According to Plaintiff, he and Adams later named the secured cabinet "Pharmasafe."  *Id.* at ¶ 15.

Plaintiff alleges that Adams trademarked and filed a provisional patent for the Pharmasafe in his name instead of in AkamaiRx's name, as had been planned.  *Id*. at ¶ 19.  Plaintiff asserts that he "confronted Adams about these acts in July 2008" and that "Adams assured him that this would have nothing to do with the financial/ownership rights in the

products and the company and that [Plaintiff] continued to hold an equal ownership share in both." *Id*.

Plaintiff then alleges that in August 2008 Moore agreed to sell her one-third interest in AkamaiRx to Bell who would provide the company with additional funding. *Id*. at ¶ 20. According to Plaintiff, on October 29, 2008, he, Adams, and Bell agreed to dissolve AkamaiRx and form a new corporation, BPE. *Id*. at ¶ 22. Plaintiff contends that "[t]he parties also agreed that BPE would reimburse [him] $20,000 in out-of-pocket expenses that he had incurred in connection with development of the Pharmasafe product. Of this agreed amount, [Plaintiff] has only been paid a total of $9,000." *Id*.

Plaintiff further alleges that in November 2008 Bell and Moore had still not agreed on the terms of the sale of her interest in AkamaiRx and that Adams sent Plaintiff an email on November 8, 2008, which "implied that if Moore did not accept [Bell's] offer, the company would not survive financially without Bell's infusion of cash." *Id*. at ¶ 23. Plaintiff asserts that Adams sent him another email the next day which stated that Adams wanted to meet about the future of AkamaiRx and that Adams was concerned about his debt and the "failure to generate any revenue." *Id*. at ¶ 24. Plaintiff alleges that on November 11, 2008, he met with Adams in California where Adams "represented to [him] that Bell had chosen not to invest in the company due to an inability to come to an agreement with Moore and that Adams believed that the company would need to shut down due to lack of funds. Adams promised to reimburse [Plaintiff] for the $20,000 in out of pocket expenses he had incurred for the company within weeks." *Id*. at ¶ 25.

Plaintiff contends that on December 4, 2008, Bell registered Pharmasafe, LLC as a New Mexico domestic limited liability company and "named himself as agent for service of process

with a headquarters in Albuquerque, New Mexico." *Id.* at ¶ 26.  According to Plaintiff, "[s]ince that time, Bell, Adams and Pharmasafe have continued to develop, market and sell the secured cabinet product under the name Pharmasafe and through Pharmasafe, rather than through BPE or AkamaiRx." *Id.*  Plaintiff also alleges that on January 7, 2009, Adams emailed him that Pharmasafe, LLC's "two key strategic partners, Amsec and Innovation, had become failed relationships" and that "'[t]hings have gone pretty far south.'" *Id.* at ¶ 27.  Plaintiff contends that those statements are false and that these "companies continue to provide their required contributions to Pharmasafe's product to the present day." *Id.*

Plaintiff maintains that "during the time that Adams was misrepresenting that Pharmasafe's business operations were winding down, Pharmasafe was expanding its business operations and recruiting additional personnel." *Id.* at ¶ 28.  Plaintiff further alleges that as of December 2011 Pharmasafe was worth at least $5 million. *Id.* at ¶ 32.  Finally, Plaintiff asserts that in July 2012 Defendants "disavowed that [Plaintiff] had any ownership interest in either Pharmasafe or its product or that any of the defendants owed [Plaintiff] anything for his contributions." *Id.* at ¶ 33.

### 2.  *Documents Pertinent to the Motion to Dismiss*

Plaintiff requests that the Court take judicial notice of three United States Patent and Trademark Office documents.  Defendants do not oppose the request.  Having considered Plaintiff's request to take judicial notice, the Court finds good cause to grant that request and, therefore, grants the request to take judicial notice.  *See United States ex rel. Dingle v. BioPort Corp.*, 270 F.Supp.2d 968, 970 (W.D. Mich.2003) ("Public records and government documents are generally considered not to be subject to reasonable dispute. This includes public records and

government documents available from reliable sources on the Internet.") (internal quotation marks and citations omitted).

The first document is a July 7, 2009, "Patent Application Publication" for the Pharmasafe which notes that Adams lives in Hawaii, but provides that correspondence be mailed to an Albuquerque attorney.  (Doc. 17-3) at 1.   The second document, also filed on July 7, 2009, is titled "Patent Assignment Details" in which Adams assigned his Pharmasafe patent to Pharmasafe, LLC in Albuquerque.  (Doc. 17-4).  As with the Patent Application Publication, this document provides that correspondence be mailed to an Albuquerque attorney.  *Id*.  The third document is an April 23, 2010, "Trademark Assignment Abstract of Title" in which Adams assigned the Pharmasafe registered trademark to Pharmasafe, LLC in Albuquerque.  (Doc. 17-2).  The "correspondent" listed on that document is also an Albuquerque attorney.  *Id.*

    3. *Plaintiff's Claims*

In Claim I, Plaintiff brings a federal Declaratory Judgment Act claim against Pharmasafe, LLC in which Plaintiff seeks a declaratory judgment that he has a 33% ownership interest in Pharmasafe, LLC.  In Claim II, Plaintiff brings a breach of fiduciary duty claim against Adams and Bell. In Claim III, Plaintiff brings an accounting claim against Adams, Bell, and Pharmasafe, LLC. In Claim IV, Plaintiff brings a promissory fraud claim against Adams, Bell, and Pharmasafe, LLC.  Finally, in Claim V (mislabeled as Claim II), Plaintiff brings an unfair trade practices claim against Adams, Bell, and Pharmasafe, LLC.

    4. *The Motion to Dismiss*

Adams moves to dismiss all of Plaintiff's claims against him under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Defendants also move to dismiss Claims II, III, IV, and V under Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted.

Plaintiff concedes that Claim IV should be dismissed as to Pharmasafe, LLC and that Count V should be dismissed in its entirety.  The Court will, therefore, dismiss those claims with prejudice. Plaintiff, however, opposes the remainder of the Motion to Dismiss.  Defendants also seek an award of costs should they prevail on the Motion to Dismiss.

B.  *Discussion*

   1.  *Rule 12(b)(2):  Whether the Court has Personal Jurisdiction over Adams*

Adams argues that the Court lacks personal jurisdiction over him because he does not have minimum contacts with the state of New Mexico.  It is well-established that the plaintiff bears the burden of showing that a court has personal jurisdiction over a defendant.  *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).  When a defendant bases his lack of personal jurisdiction argument on the pleadings and other documents, as in this case, the plaintiff can meet his burden with a *prima facie* showing of personal jurisdiction.  *Id.*  In that situation, the Court accepts '"as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff['s] complaint."'  *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted)).

In a federal diversity lawsuit, such as this one, the Court determines personal jurisdiction over a non-resident defendant by the forum state's law.  *See Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (citing Fed. R. Civ. P. 4(e)).  The plaintiff "must make two showings:  first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment."  *Id.* Because New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible," the Court need not conduct a statutory analysis separate

from the due process analysis.  *Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 2002-NMSC-018 ¶ 6, 132 N.M. 312; *Marcus*, 671 F.3d at 1166.

The due process analysis consists of two steps.  First, the defendant "must have 'minimum contacts' with the forum state."  *Marcus*, 671 F.3d at 1166 (citations omitted).  To establish minimum contacts, the plaintiff must show that the non-forum defendant "'purposefully directed' its activities at residents of the forum state" and that the plaintiff's injuries arose out of or relate to those forum-related activities.  *Shrader*, 633 F.3d at 1239.  Second, if the defendant has minimum contacts with the forum state, the Court must ensure that the exercise of jurisdiction over [the defendant] does not offend traditional notions of fair play and substantial justice."  *Marcus*, 671 at 1167 (citations and internal quotation marks omitted).

Adams correctly notes that if a court has personal jurisdiction over an LLC, members of the LLC do not automatically acquire that personal jurisdiction.  *See V-E2, LLC v. Callbutton, LLC*, 2012 WL 6108245 *3 (W.D. N.C. 2012) (citing, e.g., *Shaffer v. Heitner*, 433 U.S. 186, 213-16 (1977)).  "To hale a member of an LLC into a foreign court, the member sought to be held answerable must have had minimum contacts with the forum state independent of those of the LLC."  *Id.* (citing Bishop & Kleinberger, *Limited Liability Companies:  Tax and Business Law* § 6.08 (2006)).

a.  *Minimum Contacts:  Purposeful Direction*

In deciding the purposeful direction part of the minimum contacts requirement, the Court looks to the following factors:  "(a) an intentional action …, that was (b) expressly aimed at the forum state …, with (c) knowledge that the brunt of the injury would be felt in the forum

state…."[1] *Shrader*, 633 F.3d. at 1239-40 (internal quotation marks and citation omitted).  Aside from Plaintiff's allegation that Adams is a member of a New Mexico LLC, Plaintiff alleges in the Complaint that Adams is a resident and citizen of Hawaii.  Plaintiff does not allege that Adams has ever been in New Mexico or that any of the communications between Plaintiff and Adams took place in New Mexico.  Plaintiff also does not allege in the Complaint that Adams either founded Pharmasafe, LLC or that he chose to headquarter Pharmasafe, LLC in New Mexico.  *See* (Doc. 1) at ¶ 26 ("Bell registered defendant Pharmasafe LLC … as a New Mexico Domestic Limited Liability Company and named himself as agent for service of process with a headquarters in Albuquerque, New Mexico.").  In addition, Plaintiff does not allege that Adams has been personally operating Pharmasafe, LLC.  *See id.* at ¶ 28 ("Pharmasafe was expanding its business operations and recruiting additional personnel.").

Plaintiff argues, however, that Adams' assignments of the registered trademark and patent to Pharmasafe, LLC, which is located in New Mexico, were intentional activities expressly aimed at New Mexico.  Plaintiff further supports this argument with the fact that Adams used a New Mexico correspondence address when he assigned the registered trademark and patent to Pharmasafe, LLC.  Accepting the allegations in the Complaint as true and considering the undisputed patent documents, the Court finds that Adams intentionally assigned his Pharmasafe registered trademark and patent interests to a New Mexico LLC.  The Court also finds that these actions were expressly aimed at New Mexico because Adams both assigned the Pharmasafe registered trademark and patent to a New Mexico LLC, and provided a New Mexico correspondence address.

_____

[1] Although Plaintiff has the burden of showing that the Court has personal jurisdiction over Adams, Plaintiff does not address these factors.

The next factor concerns whether Adams knew that the brunt of his alleged injuries to Plaintiff would be felt in New Mexico.  Any alleged injuries by Adams would, presumably, consist of denying Plaintiff an opportunity to participate in managing Pharmasafe, LLC and to profit from Pharmasafe, LLC.  This lost opportunity could affect the management of Pharmasafe, LLC and possibly its profitability, matters which would be felt where Pharmasafe, LLC has it principal place of business, New Mexico.  One could, therefore, fairly infer that Adams would know that the brunt of his alleged injuries to Plaintiff would be felt in New Mexico.  The above three factors lead the Court to conclude that Adams' assignments of the Pharamasafe registered trademark and patent to Pharmasafe, LLC were purposefully directed towards New Mexico.

### b.  Minimum Contacts:  Cause of Action Arising Out of or Related to Forum Activities

This second step in the minimum contacts analysis focuses on whether there is a nexus between a defendant's forum-related activities and a plaintiff's cause of action.  *Shrader*, 633 F.3d at 1160.  The Tenth Circuit has yet to decide whether to use a proximate cause or "but-for" approach when deciding the "arising out of or related to" issue.  *Id*. at 1161.  The proximate cause test "is the most restrictive approach and requires courts to analyze 'whether any of the Defendant's contacts with the forum are relevant to the merits of the plaintiff's claims.'"  *Id*. (quoting *Dudnikov*, 514 F.3d at 1078) (internal quotation marks omitted)).  The but-for approach "is less restrictive and supports the exercise of personal jurisdiction based on 'any event in the causal chain leading to the plaintiff's injury.'"  *Id*.  (quoting *Dudnikov*, 514 F.3d at 1078).  The Court will apply both approaches.[2]

---

[2] Plaintiff also does not discuss these causation approaches despite his burden of showing that the Court has personal jurisdiction over Adams.

Plaintiff has not convinced the Court that Adams' assignments of the registered trademark and patent to Pharmasafe, LLC proximately caused or were a but-for causation of Plaintiff's breach of fiduciary duties and promissory fraud claims against Adams.[3]  These claims are based on allegedly false communications by Adams regarding the financial viability of Pharmasafe, LLC and on Plaintiff's allegation that Adams prevented Plaintiff from participating as a member of Pharmasafe, LLC.  To begin with, Adams' assignments of the Pharmasafe registered trademark and patent to Pharmasafe, LLC are simply not relevant to the merits of Plaintiff's claims against Adams because the assignments did not involve communications to Plaintiff nor did they keep Plaintiff from participating as a member of Pharmasafe, LLC. Furthermore, Plaintiff does not allege facts or produce evidence that demonstrate that Adams' assignments of the registered trademark and patent to Pharmasafe, LLC were events involved in causing Adams to make allegedly false statements about the financial soundness of Pharmasafe, LLC.  Plaintiff also does not allege facts or produce evidence that show that Adams' assignments of the Pharmasafe registered trademark and patent to Pharmasafe, LLC were somehow events involved in causing Adams to prevent Plaintiff from participating as a member of Pharamsafe, LLC.  Accordingly, Plaintiff has not alleged facts or produced evidence which show that Adams' assignments of the Pharmasafe registered trademark and patent to Pharmasafe, LLC were events in the causal chain leading to Plaintiff's injuries, i.e., denying Plaintiff an opportunity to participate in managing Pharmasafe, LLC and to profit from Pharmasafe, LLC.  In sum, Plaintiff has not demonstrated that a nexus exists between Adams' forum-related activities and Plaintiff's causes of action against Adams.

---

[3] The Court does not include the accounting claim in its discussion because accounting is a remedy as opposed to a claim for liability.  *See* discussion*, infra.*

The Court concludes that Plaintiff has simply failed to satisfy his burden of showing that Adams has the quantity or quality of contacts necessary to meet the minimum contacts needed for the Court to exercise personal jurisdiction.  *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F3d 1153, 1160 (10th Cir. 2010).  Since Plaintiff has not carried his burden of showing that Adams meets the required minimum contacts, there is no need to address the fair play and substantial justice requirement.  Consequently, Plaintiff's claims against Adams will be dismissed without prejudice for lack of personal jurisdiction.[4]

  2.  *Rule 12(b)(6):  Whether Plaintiff has Stated Plausible Claims for Breach of Fiduciary Duty, Accounting, and Promissory Fraud*

A court, in accordance with Rule 12(b)(6), may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

---

[4] Although the Court will dismiss some claims against Pharmasafe, LLC with prejudice, as noted above, and the Court will dismiss all of the claims against Adams for lack of personal jurisdiction without prejudice, for the sake of continuity and to lessen any confusion, the Court will, nonetheless, refer to these Defendants as they appear in the claims which the Court will address, *infra*.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  Courts must draw on their "judicial experience and common sense" to assess a claim's plausibility.  *Id*. at 679.

### a.  Claim II:  the Breach of Fiduciary Duty Claim

In New Mexico, courts have determined that a fiduciary relationship exists between members of limited liability companies as well as between business partners.  *See Mayeux v. Winder*, 2006-NMCA-028, 139 N.M. 235; *Moody v. Stribling*, 1999-NMCA-094 ¶ 17, 127 N.M. 630 (citing *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 1997-NMSC-052 ¶ 21, 124 N.M. 186).  Plaintiff alleges that "[a]s members of Pharmasafe, [LLC,] Adams and Bell owed fiduciary duties to [Plaintiff]."  (Doc. 1) at ¶ 40.  Adams and Bell argue that Plaintiff has not stated a plausible breach of fiduciary duty claim against them because Plaintiff has not alleged sufficient facts to show that he is also a member of Pharmasafe, LLC and, therefore, in a fiduciary relationship with Adams and Bell.  Hence, Adams and Bell contend that there can be no claim of breach of fiduciary duty until the Court decides the declaratory judgment claim and declares that Plaintiff is a member of Pharmasafe, LLC.

Plaintiff alleges in a conclusory manner in the Complaint that he "was an equal co-founder in [Pharmasafe, LLC] and never transferred his interest therein."  (Doc. 1) at ¶ 35.  Plaintiff, however, specifically alleges elsewhere in the Complaint that Bell registered Pharmasafe, LLC and named himself as agent for service of process.  *Id.* at ¶ 26.  This allegation negates Plaintiff's assertion that he was a co-founder of Pharmasafe, LLC.  Moreover, although Plaintiff alleges facts which show that he was a co-founder of AkamaiRx and BPE, nowhere

does he allege specific facts to support his assertion that he was ever a co-founder or member of Pharmasafe, LLC.  Without any specific allegations of facts to show that Plaintiff was a member of Pharmasafe, LLC, the Court can only conclude, at this time, that Plaintiff has failed to state a plausible claim for breach of fiduciary duty.  The Court will, therefore, dismiss Claim II without prejudice.

### b.  Claim III:  The Accounting Claim

In New Mexico, an accounting is a remedy.  *See, e.g., Heimann v. Kinder-Morgan CO2 Co., L.P.*, 2006-NMCA-127 ¶ 20, 144 P.3d 111; *Priestley v. Law*, 1927-NMSC-062 ¶ 4, 33 N.M. 176, *overruled on other grounds*, *Hays v. Hudson*,1973-NMSC-086 ¶ 6, 85 N.M. 512.  It is unclear, however, whether a plaintiff can raise that remedy in a separate cause of action.  *See Heimann*, 2006-NMCA-127 ¶ 20 (in context of royalty owners seeking accounting, accounting is not independent claim); *Fate v. Owens*, 2001-NMCA-040 ¶¶ 21, 31-37, 130 N.M. 503 (in context of limited partnership under Uniform Limited Partnership Act, party can bring action for accounting).  Nonetheless, the parties agree that "[w]hether Plaintiff is entitled to a *remedy* in the form of an accounting is not a question that can be answered at this stage of the litigation." (Doc. 15) at 11; (Doc. 17) at 10.  Because an accounting is a remedy which cannot exist until there is a liability determination, Plaintiff cannot state a plausible accounting claim at this time, no matter how Plaintiff raises the accounting claim.  Consequently, the Court will dismiss Claim III without prejudice.

### c.  Claim IV:  Promissory Fraud

Defendants argue that Plaintiff has not stated a plausible claim for promissory fraud for two reasons:  (1) New Mexico does not recognize a cause of action for promissory fraud; and (2)

Plaintiff has not pled the promissory fraud claim with the particularity required by Fed. R. Civ.
P. 9(b).

### (1)  Promissory Fraud in New Mexico

The parties agree that if a defendant makes a promise to a plaintiff regarding a future
event but the defendant has a present intent not to keep that promise, and the defendant, in fact,
does not keep the promise, thereby harming the plaintiff, then the plaintiff has an action for fraud
in New Mexico.  *See* (Doc. 17) at 11; (Doc. 19) at 7-8.  *See, e.g., Bhandari v. VHA Southwest
Community Health Corp.*, 2011 WL 1336515 *26-*27 (D.N.M.).  Defendants seem to argue that
Plaintiff does not allege a present intent to not fulfill a promise.  *See* (Doc. 19) at 8. ("Here,
Plaintiff's fraud claim is based in future events….").  Plaintiff, however, has alleged that
Defendants made promises that "were false when made" and that Defendants made those
promises "without them having any intention to perform them."  (Doc. 1) at ¶ 50.  Defendants'
argument that New Mexico does not recognize a cause of action for promissory fraud is without
merit.  Moreover, Plaintiff has plausibly pled that Defendants had a present intent not to keep the
promises allegedly made to Plaintiff.

### (2)  Pleading Under Rule 9(b)

Rule 9(b) provides as follows:  "In alleging fraud …, a party must state with particularity
the circumstances constituting fraud….  Malice, intent, knowledge, and other conditions of a
person's mind may be alleged generally."  The Tenth Circuit "requires a complaint alleging
fraud to 'set forth the time, place and contents of the false representation, the identity of the party
making the false statements and the consequences thereof.'"  *Koch v. Koch Industries, Inc.*, 203
F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*,
924 F.2d 176, 180 (10th Cir. 1991)).  Moreover, "[i]f there are multiple defendants, a plaintiff

alleging fraud must satisfy Rule 9(b) as to each defendant.  That is, the plaintiff must connect the allegations of fraud to each individual." *In re Kit Pack Co.*, 2009 WL 2913078 * 2 (Bankr. D.N.M.).

In this case, Plaintiff alleges that Defendants fraudulently made three promises:  (1) that Plaintiff would be an equal owner of Pharmasafe, LLC; (2) that Plaintiff would have equal ownership in Pharmasafe, LLC products; and (3) that Plaintiff would be fully reimbursed for the $20,000 he advanced to Pharmasafe, LLC.  (Doc. 1) at ¶ 49.  With respect to the first two promises, Plaintiff notes that he alleges in paragraph 19 of the Complaint that "Adams assured him" during a July 2008 conversation that he "continued to hold an equal ownership share in both" AkamaiRx and its products.  *Id.* at ¶ 19.  Plaintiff further notes that he alleges in paragraph 22 of the Complaint that both Adams and Bell in an October 29, 2008, telephone conference made the same promises regarding Plaintiff's ownership share in Pharmasafe, LLC and its products.  As Defendants correctly point out, paragraph 19 does not refer to ownership shares in Pharmasafe, LLC or its products; paragraph 19 refers to the now defunct AkamaiRx.  Defendants also correctly point out that paragraph 22, likewise, does not refer to Pharmasafe, LLC.  Instead, paragraph 22 discusses the formation of a new corporation called BPE.[5]  Finally, paragraph 22 does not specify what representations were made by Bell and what representations were made by Adams.  Plaintiff simply grouped Bell and Adams together in paragraph 22.  In sum, Plaintiff's allegations concerning the first two allegedly fraudulent promises do not meet Rule 9(b)'s particularity requirement.

With respect to the third alleged fraudulent promise, Plaintiff refers to paragraph 22 wherein he alleges that during the October 29, 2008, telephone conference "[t]he parties also

---

[5] Additionally, paragraph 22 also does not contain any allegation of a promise to give Plaintiff an equal ownership interest in BPE or its products.

agreed that BPE would reimburse [Plaintiff] $20,000 in out-of-pocket expenses that he had incurred in connection with development of the Pharmasafe product.  Of this agreed amount, [Plaintiff] has only been paid a total of $9,000."  This allegation does not specify exactly who made the promise to reimburse Plaintiff.  In addition, this allegation states that BPE would reimburse Plaintiff, not Adams or Bell.  Plaintiff further alleges that on November 11, 2008, Adams told him, in person, that "Adams promised to reimburse [Plaintiff] for the $20k in out of pocket expenses he had incurred for the company within weeks."  (Doc. 1) at ¶ 25.  This allegation, however, does not indicate whether Adams promised that he would personally reimburse Plaintiff or whether Adams represented that Bell or one of the other entities would reimburse Plaintiff.  Moreover, the content of the November 11, 2008, allegation is not clear because the reimbursement Plaintiff sought would have been for $11,000, not $20,000.  The Court determines that the allegations regarding the third fraudulent promise, likewise, do not meet Rule 9(b)'s particularity requirement.  Since Claim IV does not comply with Rule 9(b), it cannot state a plausible claim under Rule 12(b)(6).  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n. 5 (4th Cir. 1999) ("lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6).").  As noted above, the Court will dismiss Claim IV with prejudice as to Pharmasafe, LLC.  Otherwise, the Court will dismiss Claim IV without prejudice.

     *3.  Defendants' Request for an Award of Costs*

     Since Defendants have prevailed on their Motion to Dismiss, they request an award of costs.  The Court denies that request at this time because the issue of costs has not been properly briefed and presented to the Court.  Defendants are free to file an appropriate motion for costs,

with supporting documentation, in accordance with the Local Rules and the Federal Rules of

Civil Procedure.

IT IS ORDERED that Defendants' Motion and Memorandum to Dismiss for Failure to

State a Claim with Respect to Certain of Plaintiff's Claims (Doc. 15) is granted, in part, in that:

1.  Plaintiff's request for judicial notice is granted;

2.  all claims against Adams will be dismissed without prejudice for lack of personal

jurisdiction;

3.  Claims II and III will be dismissed without prejudice;

4.  Claim IV will be dismissed with prejudice as to Pharmasafe, LLC, otherwise Claim IV

will be dismissed without prejudice;

5.  Claim V will be dismissed with prejudice; and

6.  Defendants' request for an award of costs is denied at this time.

_____
UNITED STATES DISTRICT JUDGE